UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
UNITED STATES,

       Plaintiff,

 -against-

ANTHONY CHRISTIAN, et al.,

       Defendants.

---------------------------------------------------------------- X

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ DEC 18 2015 ★
BROOKLYN OFFICE

MEMORANDUM & ORDER

11-cr-425 (ENV)

VITALIANO, D.J.,

On September 16, 2015, defendant Anthony Christian sought, by letter motion, the disclosure of certain intelligence records of the New York Police Department ("NYPD") and/or the Federal Bureau of Investigation ("FBI"). The demand was grounded in *Brady*, and spotlights records, the defense alleges, which suggest that Jerome Estella was killed at the instruction of the Wu Tang Clan, a noted rap music group, rather than, as established on the trial record, by order of Anthony Christian and his racketeering organization.[1] Sept. 16, 2015 Ltr. from Michael Gold ("Def. Ltr."). On October 2, 2015, the government denied defendant's request, claiming that all *Brady* material was provided to the defense in advance of trial, and, in any event, that none of the material arguably within the bounds of the current defense request is exculpatory. Oct. 2, 2015 Ltr. from U.S. Attorney's Office ("Gov't Opp."). Defendant replied, on November 6, 2015, reiterating that the material sought had *Brady* and 3500 implications, and arguing that any previously disclosed reports did not provide notice that the FBI had identified Wu Tang Clan as

---

[1] Defense counsel claims to have become aware of the existence of such files through a Freedom of Information Act ("FOIA") request, for which a response was received after the conclusion of trial.

1

the possible architect of Estella's murder. Operationally, met by the government's stonewall, Anthony Christian's reply formally moved to compel the disclosure of "any and all additional files within their possession or reasonably under their control that might impact the case including, but not limited to, all police and FBI files pertaining to the murders of Estella and Brooker." November 6, 2015 Ltr. from Michael Gold ("Def. Reply"). On November 25, 2015, the government demurred, responding that the request amounted to an "open file" request, and that the defense had not identified specific documents warranting disclosure. Nov. 25, 2015 Ltr. from U.S. Attorney's Office ("Gov't Sur-Reply").[2]

For the reasons stated below, defendant's request for disclosure of material potentially discoverable under *Brady* or otherwise is granted to the extent that the government is directed to produce to the Court for *in camera* review any previously unproduced documents from NYPD or FBI files that have been made available to it which relate to the actions of Brian Humphreys and/or Paul Ford in the targeting and/or murder of either Jerome Estella or Corey Brooker as they may relate to a request of the Wu Tang Clan.

## Background

Familiarity with the facts of this case, which have been chronicled in various ancillary decisions, is presumed.[3] To the extent details are repeated here, it is for the purposes of clarity and convenience.

On October 27, 2014, a jury convicted Anthony Christian of numerous racketeering crimes, including the murder of Jerome Estella, also known as "Boo Boo," in violation of 18

---

[2] The government has neither admitted nor denied that such documents exist.
[3] *See, e.g.*, Mem. & Order Denying Defs. Rule 29 Mot. for J. of Acquittal and Rule 33 Mots. for New Trial, --- F.Supp.3d ----, 2015 WL 3941458, *1-4 (dated June 24, 2015) (ECF Dkt. No. 430), *amended* Aug. 28, 2015 (ECF Dkt. No. 440).

2

U.S.C. § 1959(a) (ECF Dkt. No. 393 at 8). The conviction was secured, in part, through the testimony of cooperating witnesses Brian Humphreys and Paul Ford. Humphreys testified, in substance and in part, that Anthony Christian and Ford provided him a weapon and ordered him to murder Corey Brooker, also known as "Shank Bank." Trial Tr. 395, 437-40. In the course of carrying out that order, Humphreys testified, he shot and killed Brooker's close associate, Estella. Trial Tr. 442-55. Ford's testimony corroborated that Anthony Christian had ordered Humphreys to murder Brooker. Trial Tr. 856-59, 902-06, 946-48.

The kerfuffle over disclosure, ordinarily a pre-trial affair, ignited post-trial on advice from defense counsel that he had recently become aware, through a FOIA request, that the FBI had investigated allegations that the Wu Tang Clan had contracted for Brooker's murder as revenge for robberies he and Estella committed against the group. Def. Ltr. The FOIA-uncovered investigation included an interview with Brian Humphreys, who allegedly made statements to the FBI corroborating the Wu Tang Clan's "contract" on Brooker. *Id.* Anthony Christian now argues that no such file material was made available prior to trial; he seeks disclosure of, if any, exculpatory evidence that material may contain.[4] *Id.*

## Standard of Review

The government is constitutionally required to disclose before trial all exculpatory or "favorable" material and information in its possession that falls within the scope of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). This duty is implicated "where such evidence is material either to guilt or to punishment." *United States v. Paulino*, 445 F.3d

---

[4] At this point, both sides have done little more than enter the ring and touch gloves. Defense counsel does not express a specific purpose in seeking these materials, but he notes that he is not now moving to set aside the conviction on *Brady* or other grounds. Def. Reply 2. The government does not challenge the good faith basis of the defense request.

3

211, 224 (2d Cir. 2006) (quoting *United States v. Jackson*, 345 F.3d 59, 70 (2d Cir. 2003)). Material, in these circumstances, means that "without such disclosure, a reasonable probability will exist that the outcome of a trial in which the evidence had been disclosed would have been different." *United States v. Coppa*, 267 F.3d 132, 142 (2d Cir. 2001).

Discussion

The government resists disclosure claiming that the existence of information the defense characterizes as now disclosable *Brady* evidence was provided prior to trial, and it is, in any event, not exculpatory. Gov't Opp. 1. Hewing flesh to its skeletal prior notice claim, the government points to numerous disclosures made on the eve of trial implying that the Wu Tang Clan may have been involved in the targeting of Brooker and Estella, including portions of the very FOIA response identified by defense counsel. *Id.* at 3. Two of the FBI reports that were produced before trial mentioned that someone whose name was redacted was an "enforcer" for "WTC," and that at least one unsolved homicide was ordered by "WTC" in retaliation for robbing an associate of the rap group. *Id.* at 3-4. Another report suggests that a homicide victim—whose name was, again, redacted—may have been targeted by Wu Tang Clan as retaliation for the robbery of a Wu Tang Clan associate. *Id.* at 4. Further 3500 documents indicated Humphreys believed that Wu Tang Clan "would likely come after" Estella for robbing the brother of a Wu Tang Clan associate. *Id.* at 5. Humphreys also said that there may be "repercussions" for Brooker, who had stolen a chain from the brother of a Wu Tang Clan member. *Id.* at 6. Ford, similarly, remarked that Brooker robbed a Wu Tang Clan associate, and "he would find himself dead soon…." *Id.* at 5. Ford is also on record as stating that Brooker, who died after the Estella murder, was murdered by the Wu Tang Clan. *Id.* at 8. Statements in the same report suggested that Anthony Christian and Humphreys believed Brooker had robbed

4

several Wu Tang Clan members and associates. The government concedes that the knowledge of the Wu Tang Clan's interest "may have been part of the motivation for Anthony Christian to order Humphreys to murder Brooker and for Humphreys to agree to do so." *Id.* at 7.

The defense argues that these document references were inadequate to put Anthony Christian on notice that an FBI report existed speculating that Wu Tang Clan, without connection to the Christian brothers, procured the murder of Estella. Defense counsel describes the disclosed statements as "brief, tangential, hearsay opinions and rank speculation by admitted perjurers" distinct from "an official FBI file that essentially accuses Wu Tang [Clan] of murder." Def. Reply 3. To that distinction, the August 24, 1999 FBI report that defendant received in his FOIA request allegedly memorializes the FBI's working theory, at the time it was generated, to be that the Estella homicide was ordered by the Wu Tang Clan, and with no mention of Anthony Christian or the racketeering enterprise of which he was a leader. *Id.* at 4-5.

Obviously, from the fact there is a skirmish regarding NYPD and FBI investigative files of happenings in Park Hill nearly two decades ago, some information about the subject murders remains in the shadows. There is no question that the previously disclosed 3500 material refers repeatedly to members and associates of the Wu Tang Clan, as well as the likelihood that Brooker and Estella were targeted by the Wu Tang Clan to avenge robberies of their members and associates. Nevertheless, though it is true that the recently revealed statements by Ford and Humphreys establish that they knew of the Wu Tang Clan's general interest in Estella and Brooker, those statements do not indicate, even elliptically, that Ford or Humphreys may have been acting at the behest of the Wu Tang Clan, or in any way were, at least, attempting to curry favor with that group, when they planned the murder of Brooker and Humphreys shot Estella to death. Put more forcefully, the statements and documents disclosed up to now certainly do not

show the existence of an FBI working theory that the Wu Tang Clan, rather than Anthony Christian and the Park Hill enterprise, had ordered Humphreys to murder Brooker or sanctioned the killing of Estella. Statements that the Wu Tang Clan may have also been interested in eliminating Estella, or that the Wu Tang Clan were "likely" to "come after" Brooker and Estella, are too vague to provide notice to the defense that the FBI was investigating, and perhaps itself believed, someone other than Anthony Christian was responsible for Estella's murder.

The same vagueness also hobbles the defense demand for disclosure. What has been disclosed so far shows that the Wu Tang Clan *also* may have sought the murder of Estella and Brooker. Any investigatory material in the government's control evincing a working theory of the FBI or its NYPD partners that someone unaffiliated with the Christian brothers' enterprise ordered the murder of Jerome Estella, could very well be potentially exculpatory since it would likely create the "'reasonable probability' that a different verdict would have resulted from disclosure...." *United States v. Rodriguez*, 496 F.3d 221, 227 (2d Cir. 2007) (quoting *Strickler v. Greene*, 527 U.S. 263, 281, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999)). Should, at the outer edge, evidentiary material exist showing that someone or some group independent of Anthony Christian and his racketeering organization ordered Humphreys to murder Brooker and/or Estella, and that Humphreys was following their orders when he killed Estella, arguably such evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *United States v. Coppa*, 267 F.3d 132, 135 (2d Cir. 2001) (quoting *Kyles v. Whitley*, 514 U.S. 419, 435, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995)).

While not providing ironclad assurances that no undisclosed material in its possession might be construed to support such a proposition, the government laments that the defense has not sufficiently identified materials that would support such a proposition. Manifestly, however,

6

without the undisclosed files before it, the Court can make no finding as to the exculpatory value any of those materials might have. Inarguably, though, evidence of an independent murder conspiracy is "favorable" to the defendant as it would be "material either to guilt or to punishment," *Paulino*, 445 F.3d at 224, and must be disclosed. More critically, the Court also concludes that defendant has made sufficient showing that there may be material in the broader investigative files relating to the murder of Estella and Brooker which were not previously disclosed, that show the murder of Estella and the targeting of Brooker by Humphreys and Ford were at the direction of a person or persons unrelated to Anthony Christian's Park Hill criminal enterprise.

Balancing Anthony Christian's motion seeking to vindicate his request to the disclosure of potentially exculpatory evidentiary matter and the need to protect the sensitive nature of an ongoing FBI investigation, the Court will order the government to submit for *in camera* review[5] any documents relating to reported connections between Humphreys and/or Ford with respect to their actions in targeting either Brooker or Estella with the Wu Tang Clan.

## Conclusion

For the reasons set forth above, defendant's motion is granted to the extent that the government is ordered to conduct a comprehensive review of relevant files under its control and submit for the Court's *in camera* review material relating to reported connections between Wu

---

[5] The government objects to disclosure even for *in camera* review, arguing that "*Brady* does not demand an 'open file' policy or give the defendant the right to search through the prosecution's files for potentially relevant information." Gov't Sur-Reply 4 (quoting *Kyles*, 514 U.S. 419, 437 (1995)). Contrary to the government's view, while it may be correct that defendant desires open file discovery, it should not overlook the possibility that a far more narrowly tailored inquiry is appropriate, as is the one ordered here.

Tang Clan and Humphreys and/or Ford with respect to their actions in targeting either Brooker or Estella with the Wu Tang Clan for murder. Any responsive documents, or a notice that there are none, shall be filed within 30 days of the entry of this Order on the docket.

So Ordered.

Dated: Brooklyn, New York
December 18, 2015

/s/ USDJ VITALIANO
_____
ERIC N. VITALIANO
United States District Judge